CENTENNIAL INSURANCE COMPANY v NEYER, TISEO & HINDO, LIMITED

Docket Nos. 147284, 147304. Submitted February 10, 1994, at Detroit. Decided August 4, 1994; approved for publication October 11, 1994, at 9:05 A.M. Leave to appeal sought.

Centennial Insurance Company brought an action in the Oakland Circuit Court against Neyer, Tiseo & Hindo, Limited, Imperial Indemnity and Casualty Company, and others, seeking a declaration regarding which of the insurers must indemnify Neyer, Tiseo for amounts owed to Michigan Bell Telephone Company. Neyer, Tiseo, while insured by Centennial for general liability and by Imperial for professional liability, damaged Michigan Bell's underground telephone lines in the course of boring for soil samples as part of a soil analysis project it was hired to do. Before drilling, Neyer, Tiseo had failed to notify "Miss Dig," a statutorily mandated association of utilities for the receipt of notification of excavation, drilling, boring, or other procedures that may affect underground utility lines. The court, Robert L. Templin, J., granted summary disposition for Centennial, absolving it of liability. Imperial and Neyer, Tiseo filed separate appeals. The appeals were consolidated.

The Court of Appeals *held:*

The decision to drill for soil samples before calling "Miss Dig" was part of Neyer, Tiseo's professional service of conducting a soil investigation. Coverage for professional services is expressly excluded under Centennial's general liability policy. Therefore, Imperial, as the professional liability insurer, is the insurer that bears liability for damage caused to the telephone lines.

Affirmed.

*Kohl, Secrest, Wardle, Lynch, Clark & Hampton* (by *Bruce A. Truex* and *Marylyn Harty Thompson*), for Centennial Insurance Company.

*Schier, Deneweth & Parfitt, P.C.* (by *Carl F. Schier*), for Neyer, Tiseo & Hindo, Limited.

*Sullivan, Ward, Bone, Tyler & Asher, P.C.* (by *Sheri B. Cataldo*), for Imperial Indemnity and Casualty Company.

Before: GRIBBS, P.J., and HOOD and H. E. BROWN,* JJ.

PER CURIAM. These appeals involve the question of which insurance company, the general liability insurer or the professional liability insurer, is responsible to indemnify the insured for its negligence. Imperial Indemnity and Casualty Company is the professional liability insurer; Centennial Insurance Company is the general liability insurer. In Docket No. 147284, Imperial appeals as of right the circuit court order granting Centennial's motion for summary disposition and denying the motions for summary disposition brought by Imperial and the insured, Neyer, Tiseo & Hindo, Limited (hereinafter Neyer, Tiseo). In Docket No. 147304, Neyer, Tiseo appeals as of right the same order. We affirm.

Early in 1986, Detroit Osteopathic Hospital contracted with an architectural firm, Winebrenner Ebejer Group, for various improvements. Winebrenner then contracted with Neyer, Tiseo, a consulting engineering firm that offered geotechnical engineering services, to perform a soils investigation. Neyer, Tiseo contracted with West Michigan Drilling, Inc., to conduct the soil sampling. Winebrenner supplied Neyer, Tiseo with a site location plan and a soil boring location plan. The plans showed the location of a manhole, a storm and water main, and a gas line. The plans did not show any subsurface telephone lines.

On August 15, 1986, two of Neyer, Tiseo's em-

---

* Recorder's Court judge, sitting on the Court of Appeals by assignment.

ployees were present at the site, a senior engineering technician and a staff engineer. Neither was licensed by the state. The senior engineering technician attempted to locate subsurface utility lines by looking at the site plans and checking the manhole, and concluded that there were no utility lines in the vicinity of the first boring. No one had given notice to "Miss Dig," a statutorily mandated organization created to receive notice of proposed excavation. MCL 460.705, 460.707; MSA 22.190(5), 22.190(7).

West Michigan Drilling began to drill and encountered an obstruction at a depth of 3½ feet. After the senior engineering technician determined that the obstruction was fill, drilling continued. Bits of plastic and copper wire were found on the ground when the auger was removed. Michigan Bell Telephone Company notified Neyer, Tiseo that one of its cables was damaged by the drilling and sent notice of its claim for damages in the amount of $114,000.

On December 11, 1986, Neyer, Tiseo advised Centennial by letter that "the damage occurred during the drilling of holes in the field, not during the performance of professional services. There is no way that this occurrence should not be covered by general liability policies." Centennial replied and asked that Imperial be put on notice because the allegations against Neyer, Tiseo were "for negligence and identifying the location where the drilling was to take place."

When Michigan Bell filed suit in August 1989, counsel for Centennial, for Neyer, Tiseo, and for Imperial responded. Michigan Bell requested that two of the three answers be stricken and it was agreed that Centennial would defend the suit. The lower court and counsel agreed that the stipulation and order would not prejudice the rights of

the parties in a subsequent declaratory judgment action. After mediation, Centennial and Neyer, Tiseo each paid part of the assessment, with the understanding that liability for the full amount would be decided by this declaratory judgment action.

In May 1991, Imperial, Centennial, and Neyer, Tiseo each filed motions for summary disposition. The trial court granted Centennial's motion and denied the others.

There is no merit to appellant Imperial's claim that Centennial lacked standing in this matter. The very nature of a declaratory action "is to declare interests not yet vested," and "the declaratory remedy is an especially appropriate vehicle for resolving insurance coverage disputes." *Allstate Ins Co v Hayes,* 442 Mich 56, 61, 63; 499 NW2d 743 (1993). The question whether Neyer, Tiseo "released" Imperial by trying to avoid the $50,000 deductible is not appropriately at issue in this declaratory action to determine whether Centennial was liable for the underlying settlement.

Imperial also contends that the trial court erred in granting summary disposition in favor of Centennial. In this case, "professional services" are within the terms of coverage of Imperial's policy and are specifically excluded by Centennial's policy. Centennial's exclusion encompasses "preparation or approval of maps, plans, opinions, reports, surveys, designs or specifications," and "supervision, inspection or engineering services." Imperial argues that the failure to call "Miss Dig" did not involve a professional service, and Neyer, Tiseo contends that Centennial's exclusion clause is ambiguous. We do not agree. The challenged terms have plain meanings and judicial construction is unnecessary. See *Friske v Jasinski Builders, Inc,* 156 Mich App 468, 472-473; 402 NW2d 42 (1986).

An application for leave to appeal this Court's decision in *Bernthal v Aetna Casualty & Surety Co*, 195 Mich App 501, 503-504; 491 NW2d 236 (1992), was dismissed by stipulation of those parties, and the Court of Appeals decision was declared by the Supreme Court to have no precedential force or effect, 444 Mich 1217 (1994). Nonetheless, we find the reasoning in *Bernthal* persuasive. See also *American Policyholders Ins Co v Michota*, 156 Ohio St 578; 103 NE2d 817 (1952). The decision in this case to drill for soil samples before calling "Miss Dig" was preliminary to, and part of, the "professional service" of conducting a soil investigation.

Affirmed.