**NOT RECOMMENDED FOR PUBLICATION**
**File Name: 17a0047n.06**
**Nos. 16-1176, 16-1231**
**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

**FILED**
Jan 20, 2017
DEBORAH S. HUNT, Clerk

| | |
|---|---|
| ORCHARD, HILTZ & MCCLIMENT, INC.,      ) | |
|      ) | |
|      Plaintiff-Appellant/Cross-Appellee,      ) | |
|      ) | |
|      v.      ) | |
|      ) | |
| PHOENIX INSURANCE CO.,      ) | |
|      ) | ON APPEAL FROM THE |
|      Defendant-Appellee/Cross-Appellant,      ) | UNITED STATES DISTRICT |
|      ) | COURT FOR THE EASTERN |
| and      ) | DISTRICT OF MICHIGAN |
|      ) | |
| FEDERATED MUTUAL INSURANCE      ) | |
| COMPANY,      ) | |
|      ) | |
|      Defendant-Appellee.      ) | |
|      ) | |

BEFORE: GUY, CLAY, and GRIFFIN, Circuit Judges.

GRIFFIN, Circuit Judge.

In this declaratory judgment action, plaintiff Orchard, Hiltz & McCliment, Inc. seeks a judgment requiring defendants Phoenix Insurance Company and Federated Mutual Insurance Company to defend and indemnify it in two underlying tort actions. Plaintiff appeals the district court's grant of summary judgment in favor of defendants. Most contested is whether the Phoenix and Federated insurance policies' professional services exclusions bar coverage. We affirm the judgment of the district court because liability coverage is precluded in this case.

I.

In 2011, the Village of Dexter, Michigan ("Dexter"), hired engineering and architecture firm Orchard, Hiltz & McCliment, Inc. ("OHM") to oversee upgrades to its wastewater treatment plant's sludge-handling system. The project included a design phase and a construction phase.

During the course of the project, Dexter approved three OHM proposals for "professional engineering services." Initially, OHM agreed to prepare all contract and design documents for the project including all "architectural, structural, process, plumbing, heating and ventilation, electrical and instrumentation drawings and technical specifications" for the general contractor, and a schedule for completing construction work. OHM also agreed to conduct a quality assurance and control review of all drawings and specifications.

During the construction phase, OHM was responsible for "contract administration, construction engineering, construction observation, and construction staking." Among other duties, OHM agreed to provide daily observation of "significant construction work or testing," prepare daily field reports, and check completed work for "compliance with contract documents." Moreover, OHM conducted progress meetings with Dexter staff and the project's general contractor and subcontractors, and reviewed and approved all shop drawings. Finally, when Dexter staff became concerned the project was falling behind schedule, OHM proposed that engineer Chris Nastally "provide . . . additional services" by monitoring and documenting the general contractor's activities at the construction site full time. Dexter approved.

Dexter hired nonparty A.Z. Shmina, Inc. ("Shmina") as the project's general contractor. Dexter's contract with Shmina (the "prime contract") designated OHM as the project engineer and Dexter's representative on the project. Under the prime contract, Shmina had to maintain liability insurance to "protect [Shmina], the [Village of Dexter], and Orchard, Hiltz

& McCliment, Inc., Consulting Engineers, from claims arising out of the work described in this Contract[.]"

Shmina obtained a commercial general liability insurance policy through defendant Phoenix Insurance Company ("Phoenix"). The Phoenix policy contains an additional insured endorsement extending general liability coverage to "any person or organization that you agree in a 'written contract requiring insurance' to include as an additional insured[.]" Excluded from this endorsement, however, is coverage for bodily injury, personal injury, or property damage

> arising out of the rendering of, or failure to render, any professional architectural, engineering or surveying services, including:
>
> i. The preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders or change orders, or the preparing, approving, or failing to prepare or approve, drawing and specifications; and
>
> ii. Supervisory, inspection, architectural or engineering activities.

OHM's overall project plan required the removal and replacement of two sludge digester tank lids. OHM met with Shmina regarding how this work would be done. Shmina subcontracted with nonparty Platinum Mechanical, Inc. ("Platinum") "to provide all labor and materials" for the "digester cover installation[.]" Platinum in turn subcontracted with nonparty Regal Rigging & Demolition ("Regal") to remove both digester tank lids.

Per the terms of its contract with Shmina, Platinum had to maintain a commercial general liability insurance policy. Platinum was required to endorse its policy "to add A.Z. Shmina, Inc.[,] [the Village of Dexter], and any additional parties as required by the Prime Contract Document, as additional insured[.]" Platinum's policy, obtained through defendant Federated Mutual Insurance Company ("Federated"), includes an additional insured endorsement extending coverage to "any person or organization, other than a joint venture, for whom you are performing

operations when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy." No such contract or agreement exists between Platinum and OHM.

Like the Phoenix policy, the Federated policy contains a professional services exclusion that limits coverage as provided for in the additional insured endorsement. Although worded slightly differently, the Federated provision also excludes coverage for bodily injury, property damage, or personal injury caused by

> [a]ny person or organization whose profession, business or occupation is that of an architect, surveyor or engineer with respect to liability arising out of the preparation or approval or the failure in preparation or approval of maps, shop drawings, opinions, reports, surveys, field orders, change orders, designs, drawings, specifications or the performance of any other professional services by such person or organization[.]

The digester lid removal work was underway by late April 2013. On April 22, Regal worker David McBride was using a cutting torch to remove bolts from a digester lid. Sparks from the torch ignited methane gas inside the digester tank and caused an explosion that injured McBride and killed Platinum pipefitter Michael Koch. Nastally was present at the scene of the accident taking photos of McBride as he removed bolts from the digester lid.

After the accident, McBride filed a personal injury action and Koch's estate filed a wrongful death action in Washtenaw County Circuit Court, each naming OHM as a defendant. McBride alleged negligence and gross negligence on the part of OHM in the performance of its engineering duties. Specifically, McBride maintained OHM "had a duty to exercise ordinary skill and care common to professional engineers and/or architects" that required it "to supervise all operations and to include in the plans, specifications and drawings, methods for safe removal of the digester lids[.]" Similarly, Koch's estate alleged that OHM was negligent in its duty "to exercise the ordinary skill and care and to act as a reasonably prudent professional engineer,

professional architect, and inspector of [the] upgrade of the methane handling capacities of the Dexter WWTP[.]" Both complaints alleged OHM breached its duty by failing to ensure that its engineering plans and specifications were complied with, and that related safety precautions, such as the use of methane detection devices, were implemented.

Plaintiff's professional liability insurer, XL Specialty Insurance Company, defended it in these underlying actions. OHM nevertheless filed a declaratory action in state court seeking a judgment requiring defendants to defend and indemnify it in the McBride and Koch cases. Phoenix removed the action to federal court, and Federated concurred in the notice of removal. The parties filed cross-motions for summary judgment, disputing whether OHM is covered as an additional insured under either policy and, if so, whether the policies' professional services exclusions bar coverage. After a hearing, the district court granted summary judgment in favor of defendants.

The district court ruled that plaintiff was covered as an additional insured under the Phoenix policy, but not under the Federated policy. Neither defendant had a duty to defend or indemnify plaintiff, however, because there was no dispute of material fact that the professional services exclusion in both policies barred coverage. Plaintiff's subsequent motion for reconsideration was denied, but the district court modified its original order to require Phoenix to assume a pro rata share of any defense costs and related damages should it ultimately be determined that Phoenix must cover OHM's liability.

II.

Plaintiff appeals the denial of its motions for summary judgment and reconsideration.[1] "We review de novo the district court's order granting summary judgment and its denial of [plaintiff's] motion for reconsideration of that order." *CMACO Auto. Sys., Inc. v. Wanxiang Am. Corp.*, 589 F.3d 235, 241 (6th Cir. 2009). Summary judgment is proper only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Although we view the evidence in a light most favorable to the nonmovant, *Rogers v. O'Donnell*, 737 F.3d 1026, 1030 (6th Cir. 2013), "[t]he plain language of Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

III.

Plaintiff argues defendants have a duty to defend and indemnify it in the underlying actions because: (1) plaintiff is an additional insured under the Federated policy; and (2) neither professional services exclusion applies. Michigan law governs these issues on appeal, and we apply state law in accordance with the controlling decisions of the Michigan Supreme Court. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938); *see also Allstate Ins. Co. v. Thrifty Rent-A-Car Sys., Inc.*, 249 F.3d 450, 454 (6th Cir. 2001). Where the Michigan Supreme Court has not yet addressed an issue, we predict how that court would rule in light of "all the available data."

---

[1]Defendant Phoenix also cross-appeals the district court's decision on reconsideration requiring it to assume a pro rata share of defense costs and related damages should it be obliged to cover OHM's liability. However, we need not address the cross-appeal given our ruling that plaintiff's appeal is not meritorious. *Martin Cty. Coal Corp. v. Universal Underwriters Ins. Co.*, 727 F.3d 589, 598 (6th Cir. 2013). Accordingly, defendant Federated's motion to strike defendant Phoenix's brief on cross-appeal is moot.

*Allstate Ins. Co.*, 249 F.3d at 454. "Relevant data include decisions of the state appellate courts, and those decisions should not be disregarded unless we are presented with persuasive data that the Michigan Supreme Court would decide otherwise." *Kingsley Assocs. v. Moll PlastiCrafters, Inc.*, 65 F.3d 498, 507 (6th Cir. 1995).

1.

Plaintiff's appeal implicates two insurance policies. Under Michigan law, "[a]n insurance policy is much the same as any other contract. It is an agreement between the parties in which a court will determine what the agreement was and effectuate the intent of the parties." *Auto-Owners Ins. Co. v. Churchman*, 489 N.W.2d 431, 433 (Mich. 1992). "[T]he construction and interpretation of an insurance contract is a question of law for a court to determine[.]" *Henderson v. State Farm Fire & Cas. Co.*, 596 N.W.2d 190, 193 (Mich. 1999). Courts are bound by the clear, specific language in such an agreement. *Id.*

Plaintiff maintains that defendants' policies obligate them to defend and indemnify OHM in the underlying actions. The duty to defend is broader than the duty to indemnify. *Am. Bumper and Mfg. Co. v. Hartford Fire Ins. Co.*, 550 N.W.2d 475, 481 (Mich. 1996). The duty to indemnify typically does not arise until "liability for the injury has been established." *Gelman Sci., Inc. v. Fireman's Fund Ins. Cos.*, 455 N.W.2d 328, 330 (Mich. Ct. App. 1990). "In determining whether there is a duty to defend, courts are guided by established principles of contract construction." *Citizens Ins. Co. v. Secura Ins.*, 755 N.W.2d 563, 566 (Mich. Ct. App. 2008). As Michigan courts have long held:

> The duty of the insurer to defend the insured depends upon the allegations in the complaint of the third party in his or her action against the insured. This duty is not limited to meritorious suits and may even extend to actions which are groundless, false, or fraudulent, so long as the allegations against the insured *even arguably* come within the policy coverage. An insurer has a duty to defend, despite theories of liability asserted against any insured which are not covered

> under the policy, if there are any theories of recovery that fall within the policy. The duty to defend cannot be limited by the precise language of the pleadings. The insurer has the duty to look behind the third party's allegations to analyze whether coverage is possible. In a case of doubt as to whether or not the complaint against the insured alleges a liability of the insurer under the policy, the doubt must be resolved in the insured's favor.

*Id.* at 566–67 (emphasis in original) (quoting *Detroit Edison Co. v. Mich. Mut. Ins. Co.*, 301 N.W.2d 832, 835 (Mich. Ct. App. 1981)).

With this guidance in mind, we ask whether the relevant policy language, Michigan law, and the underlying allegations against plaintiff, taken together, require either defendant to defend and indemnify OHM in the underlying actions. We conclude that they do not.

2.

Where an insurer's duty to an insured is questioned, courts typically determine whether coverage exists and then "ascertain whether that coverage is negated by an exclusion." *Buczkowski v. Allstate Ins. Co.*, 526 N.W.2d 589, 594 (Mich. 1994). While plaintiff and Federated dispute whether plaintiff is an additional insured under the Federated policy, there is no dispute that plaintiff is an additional insured under the Phoenix policy. Because we find no genuine dispute regarding whether either professional services exclusion applies, we assume without deciding that OHM falls within Federated's additional insured endorsement and turn to this determinative issue.

3.

Plaintiff argues that neither professional services exclusion bars coverage because some of the underlying allegations implicate "general project operations and work place safety" concerns for which OHM was not responsible pursuant to its contracts with Dexter. Accordingly, defendants are obligated to defend OHM unless and until the state court conclusively determines that OHM is liable for its independent acts as project engineer. Plaintiff

conflates the question of scope of coverage with that of ultimate liability. *See Walgreen Co. v. RDC Enters., L.L.C.*, No. 293608, 2011 WL 3689152, at *7 (Mich. Ct. App. Aug. 23, 2011) ("[I]t is unnecessary to determine if there is evidence that Walgreen lacks fault for the ultimate design of the catwalk. The material issue is whether the activities engaged in by Walgreen, and which form the basis for the claim against it in the [underlying] negligence case, fall within the [professional services] policy exclusion.").

Generally, the "insured bears the burden of proving coverage, while the insurer must prove that an exclusion to coverage is applicable." *Heniser*, 534 N.W.2d at 505 n.6. Although exclusions "are strictly construed in favor of the insured," courts give effect to clear and specific clauses because an insurance company cannot be held liable for risks it did not agree to assume. *Auto-Owners Ins. Co.*, 489 N.W.2d at 434.

Plaintiff does not distinguish between the Phoenix and Federated exclusions. Indeed, the clauses are similarly worded. Both broadly exclude coverage for liability "arising out of" performing or failing to perform any professional architectural, engineering, or surveying service. Both define such services to include preparing, approving, or failing to prepare or approve maps, shop drawings, opinions, reports, surveys, field orders, change orders, drawings, and specifications. In addition, the Phoenix policy excludes liability coverage for all "[s]upervisory, inspection, architectural or engineering activities," while the Federated policy also excludes liability coverage for "the performance of any other professional services by" any "architect, surveyor, or engineer[.]"

We ask whether any of the underlying allegations against OHM could fall outside these exclusions by implicating non-professional acts or omissions. Under Michigan law, "[w]hether a professional service is being rendered depends on the nature of the act or omission, not the

character or title of the person who acted or failed to act." *Shuler v. Mich. Physicians Mut. Liab. Co.*, 679 N.W.2d 106, 126 (Mich. Ct. App. 2004). Michigan appellate courts have defined "professional services" as those involving specialized skill of a predominantly intellectual nature.[2] *See, e.g.*, *Westfield Ins. Co. v. D & G Dollar Zone*, No. 306408, 2013 WL 951086, at *4 (Mich. Ct. App. Feb. 28, 2013); *see also St. Paul Fire & Marine Ins. Co. v. Quintana*, 419 N.W.2d 60, 62 (Mich. Ct. App. 1988). Consequently, not all acts performed by professionals constitute professional services. *See, e.g.*, *D & G Dollar Zone*, 2013 WL 951086, at *4 ("[W]e conclude that the term 'professional service,' as used in instant exclusions, does not contemplate the mere sale of goods at a dollar store."); *Quintana*, 419 N.W.2d at 62 (sexual assault and battery does not "fall[] within the purview of being a 'professional service'").

Michigan courts, however, have generally interpreted professional services exclusions broadly. *See, e.g.*, *Am. Fellowship Mut. Ins. Co. v. Ins. Co. of N. Am.*, 282 N.W.2d 425, 428 (Mich. Ct. App. 1979) (the "professional services" exclusion of a life insurance contract referred to *any* business activity conducted by the insured company). They have even applied them to acts not involving a specialized skill if such acts reasonably related to the overall provision of professional services. For example, a doctor was denied liability coverage for claims alleging

---

[2]Courts often rely on the Supreme Court of Nebraska's definition of "professional services" articulated in *Marx v. Hartford Accident & Indem. Co.*, 157 N.W.2d 870, 871–72 (Neb. 1968), as those "arising out of a vocation, calling, occupation, or employment involving specialized knowledge, labor or skill, and the labor or skill is predominately mental or intellectual, rather than physical or manual." *E.g.*, *Dibeneditto v. Med. Protective Co.*, 3 F. App'x 483, 486–87 (6th Cir. 2001); *Great Am. Ins. Co. v. Geostar Corp.*, Nos. 09–12488–BC, 09–12608–BC, 09–14306–BC, 2010 WL 845953, at *10 (E.D. Mich. 2010); *Cincinnati Ins. Co. v. Harding*, No. 2:06–CV–205, 2007 WL 3124654, at *7 (W.D. Mich. 2007); *Westfield Ins. Co. v. D & G Dollar Zone*, No. 306408, 2013 WL 951086, at *4 (Mich. Ct. App. Feb. 28, 2013); *St. Paul Fire & Marine Ins. Co. v. Quintana*, 419 N.W.2d 60, 62 (Mich. Ct. App. 1988). This definition of "professional services" is consistent with that given in Michigan's Business Corporation Act. *See* M.C.L. § 450.1282(b) ("a type of personal service to the public that requires that the provider obtain a license or other legal authorization as a condition precedent to providing that service").

that he failed to "properly retrieve, transport, maintain and deliver the pathology report [to a patient] as part of the nonprofessional duties of the business" and his staff "failed to properly retrieve telephone and facsimile messages, place messages in the appropriate locations and collect, sort, file and forward the mail containing the report to the proper recipient." *White v. Auto-Owners Ins. Co.*, Nos. 265380, 265389, 2006 WL 664206, at *3 (Mich. Ct. App. Mar. 16, 2006). In denying relief, the Michigan Court of Appeals emphasized the substance of the claims, reasoning that "[a]ccording to the underlying complaint, Dr. White had a professional duty as Ogburn's physician to obtain, review and report the biopsy findings. Because some portions of that duty included clerical tasks does not change the overall nature of the duty." *Id.*

Similarly, an engineering firm hired to conduct a soil investigation had to seek liability coverage from its professional liability insurer rather than its general liability insurer where two of its employees damaged telephone lines while drilling for soil samples without first calling "Miss Dig," Michigan's utility notification system. *Centennial Ins. Co. v. Neyer, Tiseo & Hindo, Ltd.*, 523 N.W.2d 808, 810 (Mich. Ct. App. 1994). The firm argued that its failure to call "Miss Dig" did not encompass a professional service, but the Michigan Court of Appeals held that, because the decision to drill before calling "Miss Dig" was "preliminary to, and part of, the 'professional service' of conducting a soil investigation," liability coverage was precluded under the firm's general liability policy. *Id.*

The Michigan Court of Appeals decision in *Hilderbrandt ex rel. Estate of Hilderbrandt v. Rumsey & Sons Constr.*, No. 220340, 2001 WL 624966 (Mich. Ct. App. June 5, 2001), is particularly instructive. In that case, a general contractor's employee was killed on a water main replacement project when a trench collapsed on him. *Id.* at *1. An engineering firm designed the project, served as consulting engineer, and monitored the general contractor's progress. *Id.*

The employee's estate filed a wrongful death action against the firm, alleging that it was negligent in failing to advise the general contractor of workplace safety violations and to provide adequate safety supervision. *See id.* at *3 and *3 n.3. The firm had a commercial general liability policy with the defendant insurer, but the insurer concluded the underlying wrongful death allegations against the firm fell within the policy's professional services exclusion. *Id.* at *1. That exclusion was worded similarly to those at issue here. *See id.* at *3.

The firm countered that it "had no obligations regarding safety on the project." *Id.* But that was not the point. Instead, the court said: "the issue is whether the failure to advise [the general contractor] and its employees of safety violations was a failure to render a professional service." *Id.* at *7. Acknowledging that "Michigan cases reveal a broad view of the term 'professional services,'" the court held that, "[a]ssuming [the firm] had a duty to recognize and advise regarding such a [safety] violation, the failure to do so involves a failure to render the professional inspection and supervision services" because "the recognition of such a violation involves some specialized knowledge and expertise in the area of trenching for water main replacement, which was allegedly to have been provided by [the firm] under the contract." *Id.* Accordingly, the underlying allegations fell within the professional services exclusion. *Id.*

That reasoning is applicable here. Dexter hired OHM to oversee all aspects of Dexter's treatment plant improvement project; it designed the plans for every facet of the project, monitored their implementation, served as an on-site consultant, and supervised the work to ensure compliance with those plans and timely progress. Both underlying complaints allege that OHM, as the project's consulting engineer, was negligent in its duty to supervise construction operations, provide adequate safety supervision, and to include in its project plans ways to ensure the safe removal of the digester lids. These acts are predominantly intellectual in nature, and

both insurance policies exclude coverage for liability "arising out of" an engineer's or architect's failure to prepare or approve drawings and specifications, other "supervisory, inspection, architectural or engineering activities," and indeed "any other professional services." Assuming the underlying plaintiffs can show that OHM owed such duties, accounting for and ensuring the safe removal of the lids in its project plans and on site would require OHM to exercise the specialized knowledge and expertise in wastewater facility project design and supervision that Dexter hired it to provide.

Plaintiff contends in a cursory fashion that some of the factual allegations in the underlying complaints implicate "improper and dangerous general construction means, methods, techniques, sequences, procedures, operations and equipment" and "improper and inadequate worker health and safety precautions and programs" that were Shmina's, Platinum's, and Regal's responsibility. This argument does not create a genuine dispute of material fact because, like the engineering firm in *Hilderbrandt*, OHM misses the point. The nature of the underlying allegations of liability is what governs the question of coverage, not the scope of OHM's responsibilities under its contract with Dexter. *See Detroit Edison Co.*, 301 N.W.2d at 835 ("The duty of the insurer to defend the insured depends upon the allegations in the complaint of the third party in his or her action against the insured."). To the extent plaintiff argues it is not solely liable for some of the underlying claims, the question of OHM's ultimate liability to the underlying personal injury and wrongful death claimants is for the state court to resolve. *See Walgreen Co.*, 2011 WL 3689152, at *7.

Plaintiff asserts that the underlying plaintiffs would hold it liable for what it deems unskilled construction and accident prevention tasks such as failing to hold safety meetings, monitor methane levels, and post warning signs. Not so. The *substance* of the underlying claims

is that OHM is liable for failing to properly plan for, and take preventative measures to ensure, the safe removal of the digester tank lids it required as part of the overall treatment plant upgrade project. The underlying plaintiffs allege that OHM had a duty as the project's consulting engineering firm to do so. Even if some of the underlying factual allegations implicate tasks that do not, in and of themselves, involve a specialized skill, such acts and omissions are reasonably related to OHM's overall provision of professional services. *See White*, 2006 WL 664206, at *3 ("Because some portions of that duty included clerical tasks does not change the overall nature of the duty."); *see also Lansing Cmty. Coll. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, No. 1:09–111, 2010 WL 774877, at *10 (W.D. Mich. March 1, 2010) (applying Michigan law) (coverage precluded even though some allegations arguably implicated non-professional services because those tasks "arose from the rendering of, or failure to render, professional services").

Phoenix and Federated provided *general* liability policies that were never intended to cover professional negligence claims. Indeed, plaintiff's *professional* liability insurer defended it in both underlying tort actions. OHM may dispute that it owed or breached the duties alleged in the underlying actions, but there is no dispute that if the underlying plaintiffs can prove their allegations, OHM's liability is excluded from coverage under the Phoenix and Federated policies.

4.

Plaintiff contends that our construction of the Phoenix and Federated professional services exclusions renders coverage under either policy illusory. That is an uphill battle. Applied to insurance contracts, the illusory coverage doctrine requires "an insurance policy to be interpreted so that it is not merely a delusion to the insured." *Emp'rs Mut. Cas. Co. v. Helicon Assocs., Inc.*, 880 N.W.2d 839, 843 (Mich. Ct. App. 2015) (quoting *Ile v. Foremost Ins. Co.*, 809

N.W.2d 617, 622 (2011), *rev'd on other grounds*, 823 N.W.2d 426, 426 (2012)). Michigan courts thus "avoid interpreting insurance policies in such a way that an insured's coverage is never triggered and the insurer bears no risk." *Id.* Because coverage could be triggered where OHM employees are exposed to liability for bodily injury or property damage caused by their ordinary negligence in performing some task that falls *outside* the provision of professional services, our interpretation renders neither policy illusory.

OHM has not established a genuine dispute of material fact regarding whether the underlying allegations against it fall outside the provision of professional services. Consequently, defendants are entitled to summary judgment in their favor.

IV.

For the foregoing reasons, the motion to strike defendant Phoenix Insurance Co.'s brief on cross-appeal is denied as moot, and the district court's judgment is affirmed.