NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0201n.06

Case No. 24-1678

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

SINGH, RX, PLLC, et al.,

    Plaintiffs - Appellants,

v.

SELECTIVE INSURANCE COMPANY
OF SOUTH CAROLINA, et al.,

    Defendants - Appellees.

)
)
)
)
)
)
)
)
)
)
)

**FILED**
Apr 14, 2025
KELLY L. STEPHENS, Clerk

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF MICHIGAN

OPINION

Before: SUTTON, Chief Judge; BATCHELDER and RITZ, Circuit Judges.

**RITZ, Circuit Judge.** In this insurance coverage dispute, Aman Deep Singh and his pharmacy appeal the district court's order granting summary judgment in favor of Selective Insurance Company and American Casualty Company. We affirm.

## BACKGROUND

Singh is a pharmacist who operates Singh, RX, PLLC d/b/a SRX Specialty Care pharmacy. Singh and SRX (together, "SRX") are based in Michigan.

In 2021, SRX purchased insurance from Selective Insurance Company and American Casualty Company. The Selective policy protected SRX against business liability arising out of bodily injury, property damage, or personal and advertising injury. SRX's policy with American Casualty covered (1) professional liability due to a medical incident for which SRX was responsible and (2) liability for personal injury claims.

The next year, Janssen Sciences, a subsidiary of Johnson & Johnson, sued SRX in the Eastern District of New York.  Janssen alleged that SRX bought and sold counterfeit Janssen-branded HIV medication.  The Janssen complaint asserted nine causes of action against SRX, namely: (1 & 2) two counts of federal trademark infringement, (3) federal false description and designation of origin in commerce, (4) federal false advertising, (5) federal dilution of mark, (6) New York state law dilution of mark and injury to business reputation, (7) New York deceptive business practices, (8) common law unfair competition, and (9) common law unjust enrichment.

SRX asked Selective and American Casualty to defend and indemnify SRX against Janssen's claims.  Both companies declined to do so.  Selective explained that the Janssen claims did not fall within its policy's definition of bodily injury, property damage, or personal and advertising injury.  Alternatively, Selective asserted that its policy excluded from coverage expected injuries, injuries caused by rendering or failure to render pharmaceutical services, and injuries arising out of intellectual property claims.  American Casualty denied coverage because its policy only covered claims brought by natural persons who received professional services and alleged bodily injury or damage to tangible property.

So SRX sued Selective and American Casualty for breach of contract in federal court.  In addition to damages, SRX sought a declaratory judgment making Selective and American Casualty liable for the future Janssen suit judgment.  All three parties filed dispositive motions—SRX moved for judgment on the pleadings or, alternatively, summary judgment.  Selective and American Casualty both moved for summary judgment.  Because SRX attached "matters outside the pleadings" to its filing, the district court treated all three motions as requesting summary judgment.  Fed. R. Civ. P. 12(d).

The district court granted summary judgment in favor of Selective and American Casualty. Applying Michigan law, the court determined that the Janssen claims were excluded from SRX's policy with Selective, because the policy did not cover injury caused by the performance of pharmaceutical services. Nor did the claims fall within the American Casualty policy, since they were not brought by natural persons. The district court further ruled that the American Casualty policy was not illusory. SRX appealed.

## ANALYSIS

We review a district court's entry of summary judgment de novo. *Safety Specialty Ins. Co. v. Genesee Cnty. Bd. of Comm'rs*, 53 F.4th 1014, 1019 (6th Cir. 2022). A district court properly grants summary judgment when, taking the evidence in the light most favorable to the nonmoving party, "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists when a reasonable jury could find for the nonmovant. *Safety Specialty Ins.*, 53 F.4th at 1020 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

Because the district court's jurisdiction was based on the parties' diverse citizenship, *see* 28 U.S.C. § 1332(a), Michigan law governs our interpretation of the insurance contracts. *SHH Holdings, LLC v. Allied World Specialty Ins. Co.*, 65 F.4th 830, 836 (6th Cir. 2023). Insurance companies in Michigan have a duty to defend when the allegations in the underlying suit "even arguably come within the policy coverage." *Am. Bumper & Mfg. Co. v. Hartford Fire Ins. Co.*, 550 N.W.2d 475, 481 (Mich. 1996). The duty to defend is broader than the duty to indemnify; where there is no duty to defend, there is also no duty to indemnify. *Id.* Thus, whether Selective and American Casualty must defend and indemnify SRX in the Janssen suit depends on the language of SRX's insurance policies.

Michigan law treats insurance policies like any other contract. *Wasik v. Auto Club Ins. Ass'n*, 992 N.W.2d 332, 336 (Mich. Ct. App. 2022). We give defined terms their stated meaning, *Farm Bureau Mut. Ins. Co. of Mich. v. Nikkel*, 596 N.W.2d 915, 920 (Mich. 1999), and interpret unambiguous language "as written," *Wasik*, 992 N.W.2d at 336 (quoting *Holland v. Trinity Health Care Corp.*, 791 N.W.2d 724, 727 (Mich. Ct. App. 2010)). But when confronted with an "ambiguous provision in an insurance contract," Michigan law directs us to construe it "against the insurer." *Id.* (quoting *Auto Owners Ins. Co. v. Seils*, 871 N.W.2d 530, 539 (Mich. Ct. App. 2015)). So too with coverage exceptions. *Bridging Cmtys., Inc. v. Hartford Cas. Ins. Co.*, 9 N.W.3d 92, 99 (Mich. Ct. App. 2023) ("Exclusionary clauses are strictly construed in favor of the insured."). With these principles in mind, we turn our attention to the policies at issue.

## I.    Selective

SRX's policy through Selective has two parts, the businessowner liability part and the commercial umbrella liability part. Although the two parts are not identical, Selective and SRX agree that they are materially equivalent. Both cover liability for bodily injury, property damage, or personal and advertising injury claims arising out of the insured's business conduct. And each includes a list of the kinds of claims that qualify as personal and advertising injury. The two parts also exclude from coverage claims resulting from the performance of professional services, including the practice of pharmacy.

Michigan law instructs courts to interpret insurance agreements in two steps; first, decide whether claims are covered by the "general insurance agreement," and if not, determine whether an exclusion bars coverage. *Safety Specialty Ins.*, 53 F.4th at 1024. The district court here only reached the second question. We too assume without deciding that the claims are covered under

the main Selective policy. *See id.* at 1024-25 (declining to reach the first question when an exclusion resolved the case).

The professional services exclusion resolves SRX's case against Selective. Under Michigan law, professional services are acts "involving specialized skill of a predominantly intellectual nature." *Orchard, Hiltz & McCliment, Inc. v. Phoenix Ins. Co.*, 676 F. App'x 515, 520-22 (6th Cir. 2017) (canvassing Michigan cases). Michigan courts have interpreted professional services exclusions broadly, to encompass "acts reasonably related to the overall provision of professional services." *Id.* at 521.

The Janssen suit implicates SRX's professional services. Janssen alleges that SRX bought and sold counterfeit HIV drugs. And dispensing medication to treat sickness is a core function of pharmaceutical practice. *See* Mich. Comp. Laws § 333.17707(8) (defining practice of pharmacy to include dispensing drugs for the prevention of illness). SRX argues that buying and selling medication is an administrative task, not a professional service. *Cf. Westfield Ins. Co. v. D & G Dollar Zone*, No. 306408, 2013 WL 951086, at *4 (Mich. Ct. App. Feb. 28, 2013) ("[T]he term 'professional service,' as used in the instant exclusions, does not contemplate the mere sale of goods at a dollar store."). But under most circumstances those actions implicate a pharmacist's specialized knowledge, because pharmacists need to select the right drugs to target specific conditions. *See* Mich. Comp. Laws § 333.17707(8)(b).

*White v. Auto-Owners Insurance Co.* is analogous. Nos. 265380/265389, 2006 WL 664206 (Mich. Ct. App. Mar. 16, 2006) (per curiam). That case involved a wrongful death action against a doctor. *Id.* at *1. The decedent's estate alleged that the doctor and his staff failed to timely deliver the results of a pathology report showing that the decedent had cancer. *Id.* Specifically, the estate contended that the doctor had negligently failed to retrieve and deliver the pathology

report, respond to messages, and maintain files "as part of the nonprofessional duties of the business." *Id.* at \*3. The doctor's insurance company declined to provide coverage for the claims, and the doctor sued. *Id.* at \*1.

The Michigan Court of Appeals held that the claims were excluded from coverage under the insurance agreement's professional service exclusion. *Id.* at \*3. It reasoned that the underlying suit arose because the doctor did not perform his professional duty to follow up with the decedent. *Id.* That "some portions of that duty included clerical tasks" was immaterial because "professional services may include [ ] business and technical activities." *Id.* (internal quotation marks omitted). Rather, the basis for the estate's claims was the doctor's failure to provide medical services.

So too here. The cause of Janssen's alleged injury was that SRX failed to perform its professional duty to prescribe the right medicine to treat HIV.

SRX's reliance on *Kuznar v. Raksha Corp.* is unconvincing. *See* 750 N.W.2d 121 (Mich. 2008). There, the Michigan Supreme Court held that pharmacies cannot be liable for malpractice in part because pharmacists are not healthcare professionals. *Id.* at 129. But *Kuznar* derived its definition of professional from Michigan's statutory scheme for licensing health facilities. *Id.* at 126-27. Those statutes do not control our interpretation of insurance contract exclusions.

SRX also implies that professional services must be provided by licensed persons. But the fact that the Janssen suit does not allege Singh was a lone actor has no effect on our conclusion. Similarly, in *White*, it was irrelevant that the doctor delegated some of his responsibilities to his employees, since he was "ultimately responsible for the actions of his staff." 2006 WL 664206, at \*3. Besides, Singh has not offered evidence that he was aided by another person. Conjecture and speculation do not create a genuine fact issue. *Walden v. Gen Elec. Int'l, Inc.*, 119 F.4th 1049, 1061 (6th Cir. 2024).

Thus, the Janssen claims do not even arguably fall within the Selective policy and Selective has no duty to defend SRX against those claims. And because there is no duty to defend, Selective also has no duty to indemnify.

Selective urges us to affirm on different grounds. True, we can affirm the entry of summary judgment for any reason supported by the record. *Gammons v. Adroit Med. Sys.*, 91 F.4th 820, 825 (6th Cir. 2024). But because the district court's analysis was correct, we need not reach Selective's alternative argument.

## II.     American Casualty

We next turn to the American Casualty policy, which applies to professional liability and personal injury claims. The policy defines professional liability as "a claim arising out of a medical incident"; a "medical incident" is "any act, error or omission in [the] provi[sion of] professional services which results in injury or damage." RE 1-3, American Cas. Pol'y, PageID 258. A personal injury claim is "a claim" that is "committed in the conduct of [the insured's] professional services" and arises out of an enumerated list of offenses. *Id.* at PageID 253, 258. The list includes torts like libel, assault and battery, and privacy invasions. It also covers intellectual property claims.

As an initial matter, we must determine whether the underlying Janssen suit involves "claims" within the meaning of the insurance contract. It does not. American Casualty issued the policy with an endorsement, which amends the definition of "claim" for both professional liability and personal injury coverage. Per the new definition, a "claim" is a "a demand for money or services alleging injury or damage" brought "by a natural person." *Id.* at PageID 275.

The contract precludes coverage because Janssen is not a natural person. A natural person is a human being. *Person*, Black's Law Dictionary (12th ed. 2024).[1] Janssen, by contrast, is a legal person: an artificial corporate entity. *See Green v. Ziegelman*, 873 N.W.2d 794, 803 (Mich. Ct. App. 2015). In the complaint in the underlying suit, Janssen and the other Johnson & Johnson affiliated plaintiffs describe themselves as such.

SRX does not dispute this finding. Rather, SRX contends that the policy contains conflicting definitions of "claim." Thus, it says, we should apply the more specific definition found in the contract part describing personal injury coverage. True, in Michigan, when two contractual terms conflict, the more specific term controls. *DeFrain v. State Farm Mut. Auto. Ins. Co.*, 817 N.W.2d 504, 509 n.22 (Mich. 2012). But there is no conflict in the policy's definition of "claim."

Generally, endorsements supersede language in the main insurance policy. *Besic v. Citizens Ins. Co. of the Midwest*, 800 N.W.2d 93, 97 (Mich. Ct. App. 2010) (per curiam). The endorsement here does so expressly, by "delet[ing]" the Professional Liability Part's definition of "claim . . . in its entirety" and "replac[ing]" it with the new definition requiring "claim[s]" to be brought by a natural person. RE 1-3, American Cas. Pol'y, PageID 275. Accordingly, the endorsement supplants—not supplements, as SRX argues—the meaning of "claim" as used for professional and personal liability coverage. As evidence of this, the endorsement concludes: "[a]ll other terms and conditions of the Policy remain unchanged." *Id.* It would be unnecessary to clarify that some terms "remain unchanged," unless the endorsement alters the meaning of certain terms.

---

[1] Michigan law prohibits using legal dictionaries to define nonlegal contractual terms. *See Wasik*, 992 N.W.2d at 340-41. But here, "natural person" is a legal term because it invokes the contrast between humans and corporate persons. So it is appropriate to look to a legal dictionary to ascertain its meaning.

SRX responds that this reading makes the personal injury policy illusory. An illusory contract exists when a contracting party makes a promise that is "so insubstantial as to impose no obligation." *Cincinnati Ins. Co. v. Hall*, No. 308002, 2013 WL 3107640, at *5 (Mich Ct. App. June 20, 2013) (per curiam) (quotation omitted). When language in an insurance contract is subject to multiple interpretations, courts in Michigan choose the interpretation that avoids rending coverage illusory. *Id.* Here, SRX claims that the policy is illusory because it only extends coverage to business tort claims brought by natural persons, even though business tort claims can only be brought by businesses.

To the contrary, the majority of the personal injury claims covered by the policy can be brought by natural persons. Libel and defamation actions are one example. True, personal injury claims must arise from SRX's provision of professional services, but that does not change our analysis. The policy's broad definition of professional services also includes actions taken by the insured as a member of professional accreditation and standards review boards, which can more easily form the basis for a personal injury claim. In any event, it is not hard to imagine such claims arising out of the performance of pharmaceutical services. *See, e.g.*, *Goulmamine v. CVS Pharmacy, Inc.*, 138 F. Supp. 3d 652, 656-58, 658-62 (E.D. Va. 2015) (addressing defamation claim by a doctor against a pharmacy after the pharmacy declined to continue filling prescriptions for the doctor because it determined that the doctor overprescribed pain medication). So the policy's coverage of claims brought by natural persons only is not illusory. As with Selective, because American Casualty's policy does not cover the Janssen claims, American Casualty has no duty to defend or indemnify.

## CONCLUSION

For those reasons, we affirm.